The morning is Day v. White, No. 17-2516. Good morning, Your Honors. Andrew Simpson on behalf of Robert White. I would like to reserve three minutes for rebuttal. That'll be granted. You know, one thing that we're concerned about, and maybe both counsel can deal with it, is sort of the related case that's pending, and what does that mean for this case? Certainly. It does not moot this case. There's two possible outcomes in the other case. Mr. White is suing to enforce a settlement agreement he reached with the appellees. If he prevails in that case, the judgment in this case would be vacated, but he could still recover attorney's fees in this case. How? Because the judgment in this case would only be vacated as to the appellees. It's not a dismissal with prejudice. All it does is vacate the judgment. If the $3 million goes away, he's protected from this judgment, where do you base the attorney's fees recovery? Because he would have prevailed. He would have prevailed here? Well, this court can reverse that judgment. Which judgment? The state court? The only judgment in existence. There's a judgment in the underlying case here. The $3 million judgment? Yes. How does that get you attorney's fees? Just because there's a fee-shifting provision in the settlement agreement? No, because of Virgin Islands law allows recovery of attorney's fees to the prevailing party. In every case? In every contract case, yes. All but personal injury cases, yes. Let's assume you're correct for a minute. Why shouldn't we just stay this case and wait to see what happens in the state case? Because I think this case is ripe and before the court. It's definitely ripe, but often for prudential reasons, we will hold ripe cases because of supervening or related cases that drive the bus, so to speak. Yes, but I think no matter what, this court will be called upon to decide this case. If we rule in your favor on this case, hypothetically, what would happen to the state case? Just for clarity, it's not a state case. It is a second district court case. If you rule in my client's favor in this case, this case will be remanded perhaps for entry of judgment in my client's favor or perhaps for further proceedings. The other case can still, in that situation, the other case can still eliminate this case. Because if my client prevails in that case, then this case, the underlying case, would become moot. Could this case eliminate the second case? Let's assume we reverse, hypothetically. Sure. We reverse. What would happen to the new case or the other case? If you were to reverse, the other case would continue because he can still enforce the settlement in that case. But it becomes moot, the other case, because the relief he's seeking is to have no obligation on any of these loans or notes. As Judge Reschrepo hypothesized, if we grant you that relief here, you don't need that relief in case number two. It depends upon what kind of relief is granted by the others. I think his question presupposes, he said if we reverse, if you get a judgment from this court saying you owe Day and Wong nothing, your client owes Day and Wong nothing, then case number two is resolved, I guess, right? If that is the result, then case number two becomes moot. But this case would not be moot. But just so I understand, case number two is based upon something that happened after the facts in this case, where you claim there was a subsequent settlement agreement, maybe after all the hurricane damage or something? Well, that's part of the whole dispute. But the settlement was reached before the hurricane. He basically said your client had done everything except some punch list items, and because he couldn't get clearance of the punch list items, then the hurricane comes in and destroys the place. And now they say he's supposed to make those repairs, too. Correct. But that case might become moot, but this case would not become moot. Because of the attorney's fees? Just because of attorney's fees. This case will never be moot. No, it wouldn't be moot, but it would be sharply reduced because all that would be at issue is are you entitled to attorney's fees as a prevailing party? That's the potential, yes. But that's not insubstantial. But why? Let's just get your advice, and I'll ask opposing counsel for the same advice. Let's get your advice about what to do prudentially. Because this case, I don't know if my colleagues would agree with me, but to me this is a very complicated, convoluted, factual pattern and fairly complex set of legal questions. The case number two appears to be a fairly smaller, cleaner case. If my premises are wrong, please tell me why they're wrong. If my premises are correct, then tell me why we shouldn't stay our hand in this case and see what happens in case number two. I think the facts are complex. I don't think the legal issues are complex. In fact, I don't think there's a lot of disagreement about the legal issues, except maybe the standard of review. I think it's really a matter of misapplication of the law to the facts. With respect to why, assuming even you feel that the legal issues are also quite complex, I think prudentially just because of the backlog in the district court, it makes sense to resolve this, because we have a tremendous backlog in our district court. And that other case might not be resolved for three to four years at a minimum, while this case then remains held in abeyance. What's the status of the other case? We have just commenced written discovery. Thank you. Can you move on to your other argument? Let me try to see if I can persuade you that this is more complex. I mean, as I read the record, the relief was granted as a holder in due course, right? Correct. But, I'm sorry, no, the relief wasn't holder in due course. The complaint was seeking relief as a holder in due course, but the relief granted was for breach of contract. Actually, the summary judgment opinion of the court is based upon their status as holders in due course. The district court opinion specifically says that. Then, when the court gets to damages, it flips and says this is based upon breach of contract, but that's not what the summary judgment decision said. And that's not what summary judgment was sought on. Summary judgment was sought on. But how can they be holders in due course when the obligation was satisfied? Well, they bought the note. They satisfied it. They satisfied it by doing that. What are they holding? The debt has been discharged. Exactly. And the district court so held, and the police don't even disagree with that on appeal. And then, really, we have to consider whether there was a breach of contract here. And your argument, as I understand it, is, well, you don't think there is, but even if there were, they didn't even plead it. So as a matter of legal practice, it's impossible that there was a breach of contract because the cause of action was never even pleaded. That's correct. And there is the doctrine of election of remedies, and I think that's what they did here. As for his complaint, all that stuff. Or is the maximum or we're not bound by labels attached apply here? I don't think so. Not when you have two avenues, you seek only one. Your opposition points out that there's another avenue because we did that in our oppositions and said they're not moving for summary judgment based upon breach of contract. My point is that there's also some case law out there that says we're not bound by labels. We look more to the substance of the claim, and perhaps the substance of the claim is a contract claim. I don't think the substance of that claim was. They even amended an alleged breach of contract solely for the Wong Day loan, and they didn't amend to add the Bank of St. Croix loan as part of that. So I think they truly elected remedies. I think that would be a question perhaps for the district judge on remand. I don't think the court at this level should be making that determination if that's how you're inclined to rule. But I really think here where very clearly they sought relief only under one theory. Even their damages are only under one theory. They have more damages under breach of contract theory because they paid the note for five years at $10,000 a month and never made any complaint to Mr. White that you owe us all this money. And when they sue for it, they don't claim he owes them all that money. So I think this is not an insignificant error, and this is not an insignificant amount that they just wrote off. It's reduced to its essence. Is it your position the note was satisfied by Wong Day, the deed was turned over by White, everybody walks away? Yes. That's it? Yes. And your client has no interest in the property because of the deed in lieu of foreclosure? That's correct. They got the property. Their remedy was to – well, I guess if they didn't elect remedies, your client would have been jointly and severally liable for the Bank of St. Croix loan, correct? Correct. Potentially, if they had defaulted the Bank of St. Croix loan, the Bank of St. Croix could have foreclosed against all three of them, and then there would have been a dispute perhaps between them as to who's responsible. You'd have contribution actions and all that. Correct. But they didn't want their credit to be damaged, so they paid it off. Well, they didn't pay it off. They bought it. I'm sorry, they bought it. And I think that's a key distinction because all they had to do was pay it off. They made a deliberate decision to proceed as holders in due course rather than simply paying off the loan and saying, hey, you owe us the money for this, you breach your settlement. So if they bought the loan and it wasn't discharged, why aren't they holders in due course? Well, if they bought the loan and it wasn't discharged, I think they are holders in due course, but the settlement agreement or the release agreement discharges that as to Mr. White. How? What language does that? Section 5 of the release agreement, which specifically says, we're not discharging anything except the Bank of St. Croix note. That's at page 107 of the appendix. And there's other evidence to support that this is the intent of the parties. There's the fact that they made no collection effort for five years. Why would you do that if you claim Mr. White owed all this money for five years? There's the fact that they paid monthly for five years at $10,000 a pop. There's the fact that they sued on the note, not the settlement agreement. And there's even an admission in their briefs at the district court level, because they don't say Section 5 of the release agreement doesn't create an obligation. They say, we satisfied that obligation when we bought the Bank of St. Croix note. So they never disputed that. Well, they did ultimately dispute, but initially they did not dispute that Section 5 of the release agreement created an obligation to discharge the note. They just claimed we met it by buying it. So if we don't go your way, the other result would be that your client is on the hook for the loan and he lost the property. That's right. He's on the hook for everything. And he gave up the deed. And he gave up the deed. He gave up all his sweat equity. And his work, yeah. And his work, yes. And one of our points is, why would anyone do that? It just doesn't make any sense. He would have been better off saying, no, I'm not going to reach any settlement with you. The council is going to say he made a bad bet on himself. And there's no evidence to support that. There's nothing on the record to support that. And, again, you're saying Section 5 just clearly states, Dan Wong and I are not assuming any prior third-party obligations except the Bank of St. Croix loan. And that's except is a big deal. Yes, absolutely. Because otherwise you haven't got what you bargained for in the release agreement. That's correct. If they didn't assume that loan. And otherwise that term is superfluous. Because it wouldn't need to be there if it wasn't the way they were doing it. I hope your adversary addresses that point. But thank you. Thank you. Good morning, Your Honor. Good morning. Kevin Rames for Frank Day and Arthur Wong. This case concerns a friendship between Mr. Wong, Mr. Day, and Mr. White. I assume it's a form of friendship. It's a form of friendship. Yes, exactly right. Very strained. Very strained. Mr. Wong and Mr. Day backed Mr. White's play. Mr. White's play was to be in the Virgin Islands and to build a house, and to build a house for them, for them to sell ultimately and make some profits. Mr. White was intended to be the substantial beneficiary of this. If you look at how the money was supposed to be distributed upon the sale, all of the cost paid, $250,000 cash to Mr. White, and then he gets 90% of the remainder and Mr. Day and Mr. Wong get 10% of the remainder. This was very advantageous to Mr. White. Mr. White took $600,000 from Mr. Day and Mr. Wong in 2002. He didn't deliver the property for four years. After four years, Mr. White and Mr. Day tightened up. Mr. Wong and Mr. Day tightened up on Mr. White and said to Mr. White, listen, you have to set a particular criteria here for delivering to us, and allowed two years to deliver, and essentially put another $300,000 into the pot. When he put another $300,000 into the pot, he says, listen, if you prevail, okay, you are going to do very, very well. If you fail, you're going to lose it all, and that's what happened here. There was consideration of $300,000 for that additional requirement to pay off the BSC loan, and he was, in fact, obliged to pay off the BSC loan. In fact, there is seven reasons, five pointed out by the district court, two additional ones pointed out by me, why this assumption of the BSC loan. But he didn't assume it himself. All three would have been jointly and severally liable on the BSC loan, correct? Absolutely. They were all three jointly and severally liable. All right. So if your clients didn't buy the loan from BSC, then they all would have had to pay it. Absolutely. There would have been foreclosure. There's no doubt about that. This is Mr. White and Mr. Day and Mr. Wong delivering money to Mr. White. Mr. White was delivering sweat equity and his talent. Okay? And so Mr. Day and Mr. Wong were, in fact, paying the Bank of St. Croix. They were paying on a regular basis, and they ultimately paid the Bank of St. Croix in full. There are seven reasons why this assume and discharge language in Section 5 does not absolve Mr. White of his responsibilities to pay the BSC loan. He accepted the obligation to pay the BSC loan under Section 2.1.2 of the settlement agreement, and he accepted it absolutely unequivocally. Okay? That's the first item. The second item is that Section 5.0 of the release agreement, which was referenced by Brother Counsel, simply talks about third-party obligations. It talks about preexisting debt to third parties. It talks about future debt to third parties. And it talks about nobody becoming a third-party beneficiary of the release agreement. It doesn't say anything about voiding the obligation, the clear obligation, of Mr. White to pay the BSC loan under Section 2.1.2 of the settlement agreement. But it specifically says accept the BSC loan. It says accept the BSC loan. I mean, isn't that very important here? Well, what they're trying to do is they're trying to avoid, by implication, that which they accepted absolutely unequivocally under Section 2.1.2 of the settlement agreement. Under that particular section, which is incorporated by reference in its entirety into the release agreement, they are absolutely obligated, that is, Mr. White is absolutely obligated to pay the BSC loan. And now, essentially, he's saying that because of this language that concerns solely third-party relationships between those three gentlemen as a group and any third party that they might be dealing with, they're saying that that somehow impliedly voids Section 2.1.2 of the settlement agreement. We say that it does not. I think your friend would argue that you're reading this just straight out of the agreement. Absolutely, I'm reading it straight out of the agreement. And this agreement was, no doubt about the fact that this agreement was intended to be strenuous, it was intended to be strict, and it was intended to benefit my client because my client had $2 million cash that was delivered to Mr. White, and he failed to deliver the house for 10 years. The original, the first payment was $600,000 in 2002. There was an attempt, there was essentially a restructuring of this deal in 2006. He failed in 2008 to deliver what he was supposed to deliver, and then my clients waited four additional years before they hired me and pulled the string on Mr. White. So, essentially, it was a total of 10 years, no product delivered, $2 million in the pot, and a series of documents written for the benefit of Mr. Day and Mr. Wong, absolutely, that imposed severe and strict requirements on Mr. White, and Mr. White pushed his chips into the middle of the table. And when James Bond does it, you know what happens. He wins. Mr. White did it. What happened was he lost, and what he's trying to do now is to simply welsh on the deal. There are additional reasons. Under Section 8.0 of the release agreement, it says that the terms of the settlement agreement cannot be waived, altered, or amended, or terminated without an additional writing. Under Section 9.0 of the release agreement, it says that White's obligations under this document cannot be converted into Day and Wong's obligations under this document. Under Section 4.1 of the release agreement, it prohibits White from suing Day and Wong on the BSC loan. Why would Section 4.0 of the release agreement say you can't sue me on the BSC loan if the BSC loan was already released by Section 5? It simply doesn't make any sense, and this is what the district court determined. In other words, you cannot use an implication under Section 5.0 to somehow void and express an unequivocal statement, you owe that money. All right, Mr. Range, let me ask you about the election of remedies issue. Yes. I can't even find the phrase breach of contract in the complaint. Yes, I understand that, Your Honor. And the word holder in due course is not in the complaint either. If you look at the complaint under Section 10, and this is what the district court found, in the complaint under Section 10, paragraph 10, it says, in the settlement agreement, it says, if we pay an additional $300,000, you are completely liable for all obligations of the BSC loan. And then you look to paragraph 11, it says the $300,000 was paid. And then if you look to the add damn them clause, it says you give me the money under the note. So essentially, it has all of the criteria. It does not use the magic word breach, nor does it use the magic words holder in due course. In my assessment, which was found by the district court, and I do not believe that it was error, in my assessment, the combination of paragraph 10, paragraph 11, and the add damn them clause gets us there. May I plead error with respect to this issue of the standard of review? Obviously, it is de novo. Obviously, it is that this court has an obligation to look at the facts of the law and make an initial determination. My brief was an error in that regard. Okay, so essentially, that is my argument with respect to Section 5.0. We do not think it gets in there. There are other arguments that he makes with respect to the definition of the term one day loan documents. He talks the issue of whether it is executed in connection with, assigned in connection with, and somehow that subsumes the BSC note. We do not think that that is the case. If you'd like me to get into that argument, I will. Could you help us a little bit on what we started discussing with counsel, the other case? Okay, yeah, the other case essentially is this. Mr. White and Mr. Day and Wong, and this proves their friendship because I wasn't involved in that settlement agreement. Essentially, they got together and they said, listen, if you fix this stuff worth about $500,000, $600,000, if you fix this stuff. Post-hurricane damage? Not post-hurricane damage, pre-hurricane post litigation. Litigation, exactly. You fix this stuff, okay, and then I will consider the case settled. The judgment go away. This is not about vacating a judgment. This is about settling the money portion of the judgment. So that's essentially what it would do under these circumstances. Except for the fact that Mr. White did a certain amount of work. Mr. Day and Wong believed that that work was wholly insufficient for the purposes, and now Mr. White is litigating on the enforcement of the settlement. So ultimately, I don't think it has any impact at all on this. This is about the payment of the settlement. It is either paid by virtue of him coming out of his pocket with cash, or it's going to be paid by him doing work on the property. That being acknowledged by the district court as being satisfactory under the settlement agreement. You're saying it's possible that if that case gets resolved, it will have nothing to do with this case. Fundamentally, I don't think that it will. It's about whether you pay or not, the three-plus-million-dollar judgment that is on the table in this case, whether you pay or not. But isn't it possible that in case number two, I know you hope this doesn't happen, but it's possible in case number two that the district court says there was a post-litigation settlement, and that settlement was satisfied by the actions, the remedial work taken by White on the property. And he's absolved of any future obligations because it wasn't his fault that the inspection didn't happen before the hurricane came. Isn't that sort of your nightmare scenario in case number two? In my opinion, that's the equivalent of him handing me a check. If the court says, and this court affirms, if it comes to that, that he satisfied the requirements of the settlement agreement, then as far as I'm concerned, deal done. As far as I'm concerned, that's the equivalent of him handing us a check for the full amount of the judgment. In this case? No, no, no, no. This case stands alone. That is about whether or not he pays or he does something which is the equivalent of paying the judgment in this case. I see. I see. You're saying if things go really badly for you in case number two, the court's decision will be tantamount to a judgment that he satisfied his obligations on this three-million-dollar judgment. That is exactly correct. That makes perfect sense. That's exactly correct. Secondarily, I'd like to say that the BSC note is not all we're talking about here. We're also talking about the Wong Day note, which is a completely separate matter. The BSC note is about $1.45 million of this judgment. The Wong Day note is about $2.4 million of this judgment. Now, the Wong Day note, he was absolved of his responsibility, released from his responsibility under the Wong Day note, under the settlement agreement and release agreement. However, he was bound by Section 4 of the release agreement not to file a lawsuit against my parties, not to file a lawsuit against Mr. Day and Mr. Wong. He did so. That triggered Section 4.1A of the release agreement, which means that he was no longer released from his obligations under the Wong Day note, and that note becomes active. What essentially that means is that whatever happens with the BSC note, the Wong Day note stands alone. The only defense that he has for the Wong Day note is that I breached, is that my clients breached, that Day and Wong breached their obligations under the settlement agreement. For Mr. Day and Mr. Wong to bring an action to determine the scope of the release, which is essentially what happened here, is not a breach. Therefore, no matter what happens with the BSC note, the Wong Day note stands and the $2.4 million stands. So either in our assessment, either we win it all or the $2.4 million in the Wong Day note stands. Anything else, Your Honors? I think that's it. I think that's it, Counsel. Thank you. Thank you very much. May it please the Court. The one thing we all agree upon is they're no longer friends. Can you start where Mr. Rames ended, Mr. Simpson? Let's assume you're correct on the BSC note. Why doesn't the Day-Wong, the $2.4 million stand? I was planning on it because they never moved for summary judgment on it, and the Court granted summary judgment without a motion on that issue, period. They only moved for summary judgment on the BSC note. Correct. There was never a motion based upon breach of the contract and specifically on the Wong Day note. So we have defenses to that. Then we get into the whole argument as to the contract interpretation, which we've touched on here. We get into the whole issue about Mr. Should we rule on that now or should that be remanded? It sounds like you're saying that issue was never teed up in the district court. That's correct. So I think you need to vacate that portion and remand. But you want a reversal on the BSC note? Yes, Your Honor. Under Section 5? Yes, Your Honor. All right. But why don't you address Mr. Rames' argument, which I think is a substantial one, that this language in 2.1.2 is pretty explicit that, look, we, day and long, are giving you new money, trying to keep this thing going here. We'll give you $300,000. And once those proceeds have been exhausted, borrowers shall be solely responsible for paying any indebtedness to the Bank of St. Croix. That's pretty explicit language, right? I think you have to go to the very next sentence, which says, failure to make those payments to the Bank of St. Croix on or before due dates shall be a material event of default. And I think it's important to understand the structure of this deal. There's a settlement agreement that's going to essentially last for two years, where Mr. White has an opportunity to sell the house. So during those two years, he's loaned the money to make the payments. He's making the payments. If he stops making the payments or if he runs out of money to make the payments, it's his job, not theirs, to make those payments. If they're successful in selling the house, he doesn't pay the Bank of St. Croix a note. The terms of the settlement agreement specify it's coming out of the proceeds. The entire joint venture is paying that. So I think Section 2.12 of the settlement agreement has to be read in the context of that settlement agreement where they're talking about in 2.12 making the payments on the due dates, in other words, the monthly payments. So you're saying 2.1.2 is essentially a loan servicing provision? Correct. He's responsible for that. What to do with the $300,000? He's required to use the $300,000 for making the payments, but there's also some other repairs that need to be made, and he's allowed to use it for that. But when that money runs out, during that two years, he's got to take over making the payments. And if the property doesn't sell within those two years, then you go to the release agreement. So you're saying paying any indebtedness owed to the Bank of St. Croix means the extant payment schedule obligation, not the corpus of the loan? What is due, yes, what is due at that time. And I think that's consistent with the following sentence. And I will acknowledge that it's not great language. There's a lot in these two agreements that's not great language. But I think that's what the parties were trying to accomplish. And if nothing else, there's a question of fact there that can't be resolved on summary judgment. Well, didn't both sides agree there weren't any material issues of fact? Yes, as to their version of the facts, and I've seen that happen many a time, where on appeal the court says it doesn't matter if the parties agree. If there's questions of fact, you can't grant summary judgment. Thank you, counsel. Thank you. We'll take the case under advisement. I'd like to ask, this is a, I don't know whether counsel actually agreed with Judge Hardin that this is a complicated case, but we'd like you to get a copy of the transcript and split it between the appellants and the, well, actually the appellant and the appellees evenly. You can touch base with the clerk of court. She'll tell you how to do that. But we'd like a copy of the transcript of this argument. We'll take the case under advisement.